Harold L. WARNER, Plaintiff,

v.

FIRST NATIONAL BANK OF MINNE-APOLIS, Defendant.

Civ. No. 4812.

United States District Court
D. Minnesota, Fourth Division.
Sept. 20, 1955.

R. H. Fryberger and M. R. Keith, Minneapolis, Minn., for plaintiff.

Dorsey, Colman, Barker, Scott & Barber, Joseph H. Colman and John G. Dorsey, Morley, Cant, Taylor, Haverstock & Beardsley, Harold G. Cant and Frank W. Plant, Jr., Minneapolis, Minn., for defendant.

DONOVAN, District Judge.

This matter comes before the Court on alternative motion by defendant for summary judgment or for a dismissal of the complaint. The motion is based upon the complaint and supporting affidavits and documents, together with the exhibits and other papers on file.

Suit was filed by plaintiff on February 15, 1954. The complaint, consisting of 200 printed pages (including exhibits), evidences the skill of counsel, acquired only by years of practice and experience. The suit is predicated on the theory that the defendant breached its duties as managing advisor of the estate of one E. C. Warner, deceased, hereinafter referred to as the testator.

Plaintiff is a son and one of the heirs of the testator, whose estate had an appraised value of over $10,000,000. E. C. Warner was domiciled in the State of Florida during the latter years of his life. He died testate. Under the terms of his will, the defendant bank was nominated a "managing advisor" to act in the role of a supervisor during probating of the estate.

The probate proceedings in the State of Florida never met with the approval of plaintiff. As a result, he has been in the Florida state and federal courts, as well as in the Minnesota courts, seeking various forms of relief. He has now commenced this proceeding, claiming that the defendant bank committed a breach of trust in its role as "managing advisor." His able counsel describe a loss to the beneficiaries under the will as "evidenced by a shrinkage of the estate from $10,078,243.05 to $2,809,910.59."

Defendant points out that the probate proceedings in Florida have been terminated, and contends its motion should be granted on the following grounds: (a) plaintiff's failure to join indispensable parties; (b) no cause of action stated; (c) res judicata; (d) lack of probate jurisdiction; (e) statute of limitations, and (f) laches.

The foregoing summary seems to be the essence of the issues raised by defendant's motion.

Plaintiff's attorneys have obviously approached this lawsuit fully aware of what they might expect to meet by way of opposition. They chose, therefore, to draft a complaint along the lines of equi-

ty practice, purporting to institute a class suit, brought by the plaintiff representing his own and the claims of others in that class. The complaint has been skilfully drawn, and is invulnerable to piecemeal attack.

██ Defendant as movant has the burden of proof, and concedes for the purposes of this motion that the factual allegations of the complaint must be taken as true. It is doubtless cognizant of the doctrine prevailing in the Eighth and other Circuits that a motion for summary judgment, or to dismiss a complaint, is an extreme remedy, and is usually awarded only in the absence of a genuine material fact issue. The Court of Appeals for the Eighth Circuit has time and again held that the field to be explored on a motion for summary judgment and dismissal is a very narrow one under the applicable Rule, saying: "That rule places the burden of demonstrating the nonexistence of any genuine fact issue upon the moving party and requires that all doubts be resolved against him." [1]

Despite the consistent holding of the Eighth Circuit, as above set forth, coun-

sel for defendant have been insistent in arguing the merits of defendant's motion. The thoroughness of their preparation, as well as the several days spent in oral argument, merits serious and studied consideration of the points and authorities relied on by them in support thereof. Plaintiff's counsel, arguing and briefing the issues with like thoroughness, concludes in these words: "The extent to which defendant and its attorneys have labored the points argued in our answering brief indicates that those points have given defendant some concern."

██ No answer has been interposed. A review of all the defenses raised by the motion, therefore, will be helpful in summarizing the issues of the instant case for determination here and for appeal, if such course follows.[2]

Defendant, in arguing its grounds for summary judgment or dismissal, has submitted its analysis of the complaint, and has classified plaintiff's claims, as set forth in the pleading, as comprising four categories,[3] some of which it argues are claims by the plaintiff for reimbursement on account of moneys paid out, and the

1. Rule 56(c), Federal Rules of Civil Procedure, 28 U.S.C.A.; Union Transfer Company v. Riss & Company, 8 Cir., 218 F.2d 553, 554; Elmer L. Caylor v. C. Edgar Virden, 8 Cir., 217 F.2d 739; Hurd v. Sheffield Steel Corp., 8 Cir., 181 F.2d 269; Dennis v. Village of Tonka Bay, 8 Cir., 151 F.2d 411; Sprague v. Vogt, 8 Cir., 150 F.2d 795; Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101.

2. An appellate court may, when necessary or desirable, sustain a correct judgment on a different ground from that adopted by the trial court, where such a ground is one that is within its power to formulate. Kithcart v. Metropolitan Life Ins. Co., 8 Cir., 150 F.2d 997, 1001.

3. Defendant's summary of plaintiff's claims adopts the identical numbers used in the complaint, as follows:

Category I
(Individual and with wife and brother)
Claim 1—Plaintiff paid interest on moneys borrowed because of failure to make timely payment of legacy.
Claim 2—Plaintiff, his wife and brother paid fees to two sets of attorneys with

respect to executors' request for instructions and lien claimed by first set of attorneys.
Claim 6—Plaintiff sued Oldworth for information and paid attorneys' fees.
Claim 18—Plaintiff or plaintiff and his wife paid expenses in defense of executors' claim against estate for expenses incurred by them in Florida federal court litigation.
Claim 28—Plaintiff incurred expenses in the preparation of the complaint in the instant suit.

Category II
(Estate)
Claim 3—Executors and defendant charged estate for services concerning claim of plaintiff's attorneys against plaintiff.
Claim 4—Payment of legacies was unnecessarily delayed and interest accrued thereon.
Claim 7—Executors did not render proper accounting to Florida Probate Court.
Claim 8—Interest on federal and Florida estate taxes was unnecessarily paid

others derivative claims on behalf of all beneficiaries under the trust.

Plaintiff vigorously responds by asserting that defendant may not so "dissect" the complaint, but must treat it as a legal theory composed of a "bundle of rights." Plaintiff maintains that the pleading, though admittedly long and detailed, is not misleading; that it was intended to be informative and to avoid demands for a "bill of particulars" or motion to make "more definite and certain."

In view of the fact that there are claims which are for the benefit of the class, the point raised by defendant as to indispensable parties is pertinent and should be discussed first. The issue may therefore be stated thus:

(1) Is this a class suit?

(2) If so, is plaintiff the proper party to prosecute it?

Defendant contends this is not a class suit within the meaning of Rule 23 because the beneficiaries are indispensable parties and are not so numerous as to make their joinder impracticable.[4] Furthermore, it contends that in any event plaintiff is not the proper party to prosecute the action, for, having active-

because of exclusion of trusts from original estate tax returns.

Claim 9—Interest was unnecessarily paid on federal and Florida estate taxes because Ellsworth stock was returned at too low a value on original estate tax returns.

Claim 10—Federal estate tax was overpaid because stock of Ellsworth was valued at too high a value in settlement of the estate tax.

Claim 16—Certain travel expenses of officer of one of executor banks were improperly paid.

Claim 17—Excessive executors' fees were paid despite contract with E. C. Warner as to fees.

Claim 19—Executors did not pay interest on daily cash balances in the estate.

Claim 20—Certain household furniture was not accounted for.

Claim 21—Interest paid to beneficiaries was not deducted for income tax purposes.

Claim 22—Plaintiff cannot determine which expenses in the estate were charged against income and which against principal.

Claim 23—Payment of annuities was improperly delayed and interest became payable thereon.

Claim 24—Income tax loss resulted from failure to pay annuities out of estate income.

Claim 25—Income tax loss resulted because income was not annually distributed to beneficiaries.

Claim 26—Certain municipal bonds and stocks were improperly and improvidently sold at a loss.

### Category III
#### (E. C. Warner Company)

Claim 11—Company improperly paid defendant a total of $14,250 for services rendered company by A. E. Wilson, an officer of defendant.

Claim 12—Company improperly sold 10,050 shares of stock of First Bank Stock Corporation.

Claim 13—Company improperly sold premises at 7th Street and 2nd Avenue in Minneapolis.

Claim 14—Company improperly failed to collect full rent from part of 7th Street and 2nd Avenue premises.

Claim 15—Company improperly sold premises at Calhoun and West Lake Street.

Claim 27—Defendant took secret and improper profit in sharing real estate commission on sale of premises at 7th Street and 2nd Avenue South, Minneapolis.

### Category IV
#### (Oldworth)

Claim 5—Company sustained loss because of improper purchases and sales of corporate stocks and because of unnecessary expenses.

4. In its brief discussing class suits, defendant further subdivides its categories into two claims, first those claims of the beneficiaries separate and apart from the controversies involving stock in the E. C. Warner Company and Oldworth Ltd., and second, claims growing out of the latter-mentioned companies. However, in view of the plaintiff's stated theory that his suit is brought against the managing advisor in a direct action (citing General Rubber Company v. Benedict, 215 N.Y. 18, 109 N.E. 96, L.R.A.1915F, 617; Matter of Auditore's Will, 249 N. Y. 335, 164 N.E. 242, 62 A.L.R. 551, and Ritchie v. McMullen, 6 Cir., 79 F. 522), discussion may perhaps be limited to the question of whether in the instant

ly participated in the Florida litigation, he is particularly vulnerable to such defenses as res judicata and estoppel by judgment.

Plaintiff contends that this is a class action: First, because the class is so large as to make its joinder impracticable (he claims the number to be 30 to 32, where as defendant claims it is 13); second, because under equitable principles where a suit is brought for the protection, preservation and administration of a trust estate it is a true class suit; and third, because the procedural device of a class action should not be circumvented by narrow, arbitrary and technical restrictions. It is plaintiff's position that any recovery will be for the benefit of the estate, where all interests are clearly defined under the terms of the will.[5]

 If it is at all questionable whether plaintiff has sufficiently pleaded a class action, any deficiency in that respect is subject to correction by amendment, and if plaintiff has a cause of action, he should not be restricted by a narrow, arbitrary and technical interpretation by this court. Even if other parties were required to be joined, it is doubtful that such joinder would alone oust the court of jurisdiction in light of the academic rule that diversity of citizenship is determined by the initial parties before the court.[6]

As to whether or not plaintiff is the proper party to prosecute this action, as plaintiff characteristically states with emphasis, he has been the only one who has seen fit to assemble the facts and assume the expense of such prosecution. His recovery, if any, would necessarily be for the benefit of all.

Defendant has next urged that the court is without jurisdiction on an additional ground, namely, lack of statutory power and ability to probate. It attacks the complaint as an attempt to reprobate the estate in this court. Plaintiff and defendant concede that this court has no jurisdiction to probate a will or to administer an estate, but they differ on the effect of the plaintiff's cause of action.[7]

This jurisdictional defense is obviously most serious in nature and could well be fatal to plaintiff's cause of action in the final analysis. It is readily obvious that counsel disagree as to the extent of the Florida probate court's jurisdiction to determine matters affecting the managing advisor.[8] Defendant contends

---

case brought on behalf of the estate, plaintiff has failed to join indispensable parties.

In this connection, defendant contends the beneficiaries must be joined for the obvious reason that the receivers or successor (the defendant herein) would obviously decline to bring the action and that joinder of the beneficiaries (as required under the holdings of Weis v. Kundert, 172 Minn. 274, 215 N.W. 176; Spitz v. Dimond, 131 N.J.Eq. 186, 24 A.2d 188; Young v. Powell, 5 Cir., 179 F.2d 147, and Crutcher v. Joyce, 10 Cir., 134 F.2d 809) would oust the court of jurisdiction because of nondiversity as to all parties.

See also: Rule 12 (b) (7), Federal Rules of Civil Procedure; O'Brien v. Markham, D.C.S.D.Cal., 17 F.Supp. 633 and Note; Indispensable Parties in the Federal Courts, 65 Harvard Law Review, 1050.

5. Montgomery Ward & Co. v. Langer, 8 Cir., 168 F.2d 182; Boesenberg v. Chicago Title and Trust Co., 7 Cir., 128 F. 2d 245, 141 A.L.R. 565.

6. See Montgomery Ward and Boesenberg cases, supra, and Johnson v. Riverland Levee, 8 Cir., 117 F.2d 711, 714, 134 A. L.R. 326.

7. Four days of oral argument by counsel and hundreds of pages of briefs filed with the court adequately demonstrate such difference of opinion.

8. Counsel have raised the question of whether, in the light of section 655.27, Florida statutes, F.S.A., expressly prohibiting foreign corporations from acting as executors or administrators in Florida, a suit may be maintained against a managing advisor. However, neither party has cited a case in point, and it would indeed seem an unwarranted usurpation of power for the trial court to declare such designation in the will invalid.

that the probate court's jurisdiction is in rem and that by the modern rule of res judicata, defendant may assert the same, though not a party nor privy to any of the state court and other related actions. In short, defendant asserts judicial comity should prevail and put an end once and for all to this litigation. Plaintiff, on the other hand, claims the Florida court's jurisdiction is limited by statute, excluding nisi prius courts; hence comity is not involved. Plaintiff also urges a legal theory of estoppel against estoppel.

It would appear that one of the most serious challenges asserted by defendant is that where plaintiff's contentions are solely as to administration, a federal court has no jurisdiction.[9]

Realistically, it is difficult to escape the practical conclusion that the plaintiff now attempts to accomplish by the instant action what he failed to achieve in the probate proceedings. If that is his goal, the Markham case (cited in marginal note 9) affords him little solace for plaintiff may not have duplicate "administration."

■ As much as the practical seems obvious, however, an analysis of plaintiff's complaint discloses he seeks to establish not only his own claims, but claims for the benefit of the estate. At least as to the claim relative to the defendant's splitting of a real estate commission, there is admittedly a disputed fact question. If such were established by proof, plaintiff might require defendant to surrender to the estate the fees it

has collected for its services as managing advisor. By his all-inclusive pleading, therefore, plaintiff seeks to come within the language of the Markham case, supra. Wisdom, therefore, suggests that for the good of all concerned, the trial court should not grant defendant's motion on the ground of lack of jurisdiction.

As has been stated previously in discussion of judicial comity, defendant has also urged the defense of res judicata, arguing that the same may be asserted in some instances, even by one not a party to nor privy to the previous action. However, this defense is weakened by the fact that some of the counts alleged by plaintiff were not passed on by the Florida court, or by any other court.[10] Consideration of the only pleading on file necessitates constant attention to the allegation of mismanagement which must be considered in its entirety for if there is any genuine issue of fact the case is not one for summary judgment.

Despite the skilful pleading of plaintiff, however, one is impressed by the long history of litigation between these parties. Mindful of the maxim that there must be an end to law suits, the question suggests itself whether the unusual delay in commencing the instant suit bars recovery because of laches and the statute of limitations.

■ Persons injured by careless management of trust property must exercise legal rights within a reasonable period of time. Failure to do so may con-

9. Defendant cites Kittredge v. Stevens, 1 Cir., 126 F.2d 263. Where the federal court has jurisdiction of the parties it can determine the interest of a person, for example, in the residue, but it does not have jurisdiction to determine the amount of such residue. Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80. See also Princess Lida v. Thompson, 305 U. S. 456, 59 S.Ct. 275, 83 L.Ed. 285, discussed in the Kittredge case, supra. The general rule is discussed in 2 Cyc. of Federal Procedure, § 108, page 222 (2nd Edition) and annotation, 158 A.L.R. 9.

Plaintiff relies on Markham v. Allen,

326 U.S. 490, 66 S.Ct. 296, 298, 90 L. Ed. 256, which holds in effect that federal courts of equity have jurisdiction to entertain suits "'in favor of creditors, legatees and heirs'" and other claimants against a decedent's estate, "'to establish their claims'" so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction thereof, or control of the property in the custody of the state court.

10. Specifically, the real estate claim. Plaintiff also argues that the duty and capacity of the defendant as "managing advisor" has never been litigated in any court.

stitute a bar to later complaint. The equitable doctrine of laches was designed to promote justice by preventing surprise through the revival of claims permitted to slumber for an unreasonable period of time. In other words, the right to be free of stale claims prevails over the right to prosecute them. Long ago Mr. Justice Story, with customary clarity, stated the reason for the rule in these words: "It is for the public interest and policy to make an end to litigation, or, as was pointedly said by a great jurist, that suits may not be immortal, while men are mortal." [11] Public interest, order and tranquility, therefore, require that interested parties acquaint themselves with existing rights within a reasonable time. What constitutes a reasonable time is not illimitable.[12] The institution of proceedings alone does not relieve one of the charge of laches.[13]

The instant case could have been brought at any time within six years prior to March 19, 1953.[14] With the possible exception of an express trust and fraud, or fraudulent concealment, the statute of limitations commences to run from the time of the commission of the act complained of, and, in my opinion,

the fiduciary relationship does not toll the running of the statute.[15]

"The statute of limitations is [not a means of persecution, but rather] a statute of repose, designed to protect the citizens from stale and vexatious claims, and to make an end to the possibility of litigation after the lapse of a reasonable time." [16]

The plea of the statute is a meritorious defense, the invoking and enforcing of which cannot be refused by the trial court, if the cause of action accrued prior to the statutory period of time that elapsed before the commencement of the action. Where the statute has run, as I have concluded, a protracted trial and expended effort of counsel would be futile.

Counsel representing all parties to the instant case are to be commended for the careful research they have made, their able presentation of points and authorities during oral argument, and by the briefs they have submitted, all of which have been of great help.

My opinion is, therefore, that the statute of limitation bars recovery by plaintiff.

Defendant's motion for summary judgment, therefore, is granted.

11. Ocean Insurance Co. v. Fields, 18 Fed. Cas. pp. 532, 539, No. 10,406, 2 Story 59.

12. Wetzel v. Minnesota Ry. Transfer Co., 169 U.S. 237, 18 S.Ct. 307, 42 L.Ed. 730.

13. Johnston v. Standard Mining Co., 148 U.S. 360, 370, 13 S.Ct. 585, 37 L.Ed. 480. Mackall v. Casilear, 137 U.S. 556, 567, 11 S.Ct. 178, 34 L.Ed. 776.

14. The statute commences to run against a cause of action from the time it accrues and when the holder of the right may apply to the court for relief. The case herein is governed by Subdivision 1, M.S.A. § 541.05(1), of the Minnesota Statute of Limitations.

A review of the file would indicate that the final account in the Florida Probate Court proceedings was filed February 6, 1947, and that a written defense institut-

ed by plaintiff was filed March 19, 1947, in the County Judge's Court of Palm Beach County, Florida.

15. Jones v. Hammond, 168 Minn. 131, 209 N.W. 864; Bachertz v. Hayes-Lucas Lumber Co., 201 Minn. 171, 275 N.W. 694; See generally, Sullivan v. Stout, 120 N.J. L. 304, 199 A. 1, 118 A.L.R. 211; 3 A.L. R.2d 1388, 1389; Burns v. New Amsterdam Casualty Co., 205 Minn. 391, 285 N.W. 885.

Plaintiff contends that despite his knowledge of the acts complained of for longer than the statutory period, and despite the fact he could have sued earlier, the statute did not commence to run until the estate was closed.

16. Mr. Justice Stone, in Guaranty Trust Co. v. United States, 304 U.S. 126, 136, 58 S.Ct. 785, 790, 82 L.Ed. 1224.